UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
THE PENN MUTUAL LIFE INSURANCE
COMPANY,

        Plaintiff,

     -against-

KATHY KEHOE, as Trustee of the SICKNESS
ACCIDENT & DISABILITY INDEMNITY
TRUST 2005; KATHY KEHOE, as Trustee of the
GRIST MILL TRUST DATED 10-1-03; and
UNIVERSITAS EDUCATION LLC,

        Defendants.
---------------------------------------------------------------X

Case No. 15-cv-01111-AJN

LIFE INSURANCE COMPANY OF THE
SOUTHWEST,

        Plaintiff,

     -against-

KATHY KEHOE, as Trustee of the GRIST MILL
TRUST DATED OCTOBER 1, 2003; and
UNIVERSITAS EDUCATION LLC,

        Defendants.
---------------------------------------------------------------X

Case No. 15-CV-04594-AJN

**MEMORANDUM OF LAW IN SUPPORT OF UNIVERSITAS' MOTION FOR LEAVE, PURSUANT TO FED. R. CIV. P. 30(a)(2)(B), TO TAKE THE VIDEO DEPOSITION OF DANIEL CARPENTER IN PRISON**

Third-Party Defendant Universitas Education, LLC ("Universitas"), by its attorneys Loeb & Loeb LLP, submits this Memorandum in support of its motion for leave, pursuant to Fed. R. Civ. P. 30(a)(2)(B), to take the video deposition of Daniel E. Carpenter who is presently incarcerated at USP Canaan, 3057 Easton Turnpike, Waymart, PA 18472 for unrelated financial crimes. *See U.S. v. Carpenter*, No. 04-CR-10029 (D. Mass.). Mr. Carpenter also faces separate charges of 24 counts of fraud, money laundering, and engaging in illegal monetary transactions related to the theft of insurance proceeds belonging to Universitas. (Superseding Indictment, No. 3:13CR226 (RNC) (D. Conn.))

## STATEMENT OF FACTS

Universitas is the beneficiary of the Charter Oak Trust Welfare Benefit Plan that in May 2009 received approximately $30.6 million for Universitas' benefit. Universitas never received its $30.6 million proceeds because it was a victim of a massive fraud perpetrated upon it by Mr. Carpenter. Mr. Carpenter, with the aid of his cohorts including both Co-Defendants herein, fraudulently transferred the Proceeds out of the Charter Oak Trust for his own and his family's gain.

Mr. Carpenter controlled and controls both of the Co-Defendants herein: Co-Defendant Grist Mill Trust Dated October 1, 2003 (also referred to as the Grist Mill Trust Welfare Benefit Plan; the "Grist Mill Plan")), and Co-Defendant Sickness, Accident & Disability Indemnity Trust 2005 (the SADI Plan"). Of particular relevance here, it has been judicially determined by this Court (the Honorable Laura Taylor Swain) that Co-Defendant Grist Mill Plan "was under Mr. Carpenter's control at all relevant times," and that Mr. Carpenter withdrew millions of dollars that Universitas was entitled to, by using the Plan (as well as his other entities) as a vehicle for secreting assets, including insurance proceeds, and to support the lifestyle and legal battles of Mr. Carpenter and his family. See *Universitas Educ., LLC v. Nova Group, Inc.,* No. 11-CV-1590-LTS-HBP, 2013 U.S. Dist. LEXIS 165803, at *14 (S.D.N.Y. Nov. 20, 2013), and *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11-CV-1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077, at *10-16 (S.D.N.Y. Aug. 7, 2014).

On August 12, 2014, Judge Swain awarded Universitas several Judgments, including against Mr. Carpenter for $30.6 million and against the Grist Mill Plan, and any trustees and plan sponsors thereof insofar as they hold Grist Mill Plan assets, for $4,487,007.81. Copy of the August 2014 Judgment attached to Universitas' Answer, 15 Civ. 1111, Dkt. 22, Exh. 2.

As set forth in Universitas' Answers in these consolidated cases, Mr. Carpenter and his family manipulated Co-defendants Grist Mill Plan and the SADI Plan for their own personal interests. Mr. Carpenter dominated and controlled the Grist Mill Plan and the SADI Plan, and commingled and intermingled assets, such that the Grist Mill Plan and the SADI Plan were the alter ego of Mr. Carpenter, and liable for his obligations. In short, Mr. Carpenter abused the corporate form in order to shield his assets from Universitas and others, and used the Grist Mill Plan and the SADI Plan to hinder, delay and defraud Universitas and others.

## SUPPORTING LAW

A party may seek to obtain leave of court to depose a witness confined in prison pursuant to Fed. R. Civ. P. 30(a)(2)(B). The court "must grant leave to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2). "Under Fed. R. Civ. P. 26(b)(1), the scope of discovery is broadly construed to include 'any nonprivileged matter that is relevant to any party's claim or defense . . . [which is] reasonably calculated to lead to the discovery of admissible evidence.'"[1] *Vuona v. Merrill Lynch & Co.*, 2011 U.S. Dist. LEXIS 131491 (S.D.N.Y. Nov. 11, 2011) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Relevance," in turn, is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Id. at *8 (quoting

---

[1] "On December 1, 2015, Rule 26(b)(1) was amended to require that discovery be 'proportional to the needs of the case.' While the amendment codified a proportionality requirement, courts in this Circuit have long had discretion to limit discovery requests that are disproportionate to the needs of the case, dating at least as far back as the 1983 amendments to Rule 26. As such, the 2015 amendment does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exactingly." *Robertson v. People Magazine*, 2015 U.S. Dist. LEXIS 168525 *4-5 (S.D.N.Y Dec. 16, 2015) (internal citations omitted).

*Oppenheimer Fund, Inc*., 437 U.S. at 351).

The corporate forms of Co-Defendants Grist Mill Plan and SADI Plan should be pierced because they are alter egos of Mr. Carpenter. Moreover, Universitas has a Judgment against Co-Defendant for nearly $4.5 million. As such, Universitas is entitled to the money interpleaded into the Court, as the SADI Plan is the owner and beneficiary of Policy No. 008170968, and the Grist Mill Plan is the owner and beneficiary of Policy No. 008199632 and Policy No. LS0147497.

"Under New York law, the theories for alter ego and piercing the corporate veil are evaluated together." *Messer v. Bentley Manhattan Inc. (In re Madison Bentley Assocs., LLC)*, 2015 Bankr. LEXIS 3507 (Bankr. S.D.N.Y. Oct. 16, 2015) (citing *In re JMK Constr. Group, Ltd.*, 502 B.R. 396, 405 (Bankr. S.D.N.Y. 2013)). "[P]iercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation with respect to the transaction; and (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in injury to the plaintiff." *Messer*, 2015 Bankr. LEXIS 3507 at *25. "[C]ourts may disregard the corporate form to achieve an equitable result 'when a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego . . . .'" *Id.* at *26 (quoting *JSC Foreign Econ. Assn Technostroyexport v. Int'l Dev. & Trade Servs.*, 386 F. Supp. 2d 461, 471 (S.D.N.Y. 2005)). "The critical question is whether the corporation is a shell being used by the individual shareowners to advance their own purely personal rather than corporate ends." *Messer*, 2015 Bankr. LEXIS 3507 at *26 (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers S. Inc.*, 933 F.2d 131, 138 (2d Cir. 1991)).

Mr. Carpenter clearly possesses knowledge relevant to the formation of the Co-Defendants, his control of the Co-Defendants, and his use of the Co-Defendants to advance his own purely personal rather than corporate ends. This Court has already held that "Mr. Carpenter controlled…[Third-Party Defendant] Grist Mill Trust Welfare Benefit Plan…as well as hundreds of other related entities." *Universitas Educ., LLC v. Nova Group*, Inc., 2014 U.S. Dist. LEXIS

109077, at *7. And this Court has found that Mr. Carpenter abused his control of the Grist Mill Plan and "hundreds of other related entities" to make numerous fraudulent transfers, essentially using the entities as his own personal piggy bank–to the detriment of Universitas. Specifically, in its August Order, this Court found:

> Mr. Carpenter [has] fraudulently transferred $8,677,276.75 and $2,186,566 (a total of $10.8 million) from Charter Oak Trust to Grist Mill in May 2009 for his own benefit….[O]f these funds, $3.79 million was then transferred from Grist Mill to GM Trust, $2.7 million was transferred from GM Trust to Phoenix, $2.5 million was then transferred from GM Trust back to Grist Mill, $2.2 million was transferred to GM Holdings, and that GM Holdings then transferred $1.2 million to Hanover. The Court held that each of these transfers was fraudulent…On October 27, 2009, Mr. Carpenter caused $19.8 million to be transferred from the Charter Oak Trust to Grist Mill's account. Mr. Carpenter then caused $19 million to be transferred from Grist Mill to GM Holdings the next day, on October 28, 2009. Grist Mill also transferred $6,710,065.92 to Avon on November 11, 2009, at the direction of Mr. Carpenter. November 12, 2009, Mr. Carpenter caused GM Holdings to transfer $4,140,000 to CFG. GM Holdings transferred an additional $7 million to CFG on December 3, 2009. On December 3, 2009, CFG transferred $5 million to Phoenix at the direction of Mr. Carpenter. That same day, Grist Mill made two transfers to GM Trust, in the amounts of $510,000 and $178,125….The Court finds that Petitioner has demonstrated by clear and convincing evidence that these transfers among Mr. Carpenter's entities were fraudulent.

*Id.* at *10-12 (internal citations omitted).

Additionally, this Court has found that other representatives of the Grist Mill Plan lack personal knowledge of the relevant facts. *See e.g.*, *id.* at *15: "Nor does the affidavit demonstrate that Ms. Kehoe has personal knowledge of any facts regarding the transfers. The affidavit appears to be based on the assertions of Mr. Carpenter and his wife….Ms. Kehoe's testimony lacks foundation, as she has not demonstrated personal knowledge of the transfers."

Given the requirements imposed on Universitas to prove its Cross-Claims, and the evidence already established and accepted as fact by this Court, granting leave to depose Mr. Carpenter is wholly consistent with Fed. R. Civ. P. 26(b)(1) and (2) as required by Fed. R. Civ. P. 30(a)(2)(B). Thus, pursuant to Fed. R. Civ. P. 30(a)(2)(B), and the Revised Civil Case Management Plan and Scheduling Order (Dkt. 32), Universitas seeks leave to take a video deposition of Mr. Carpenter in prison.

## **CONCLUSION**

Mr. Carpenter possesses knowledge relevant to Universitas' claims and defenses herein and thus Universitas respectfully requests that the Court grant it leave to take Mr. Carpenter's video deposition in prison.

Dated: New York, New York
December 23, 2015

LOEB & LOEB LLP

By: /s/ Paula K. Colbath
Paula K. Colbath (PC-9895)
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

*Attorneys for*
*Universitas Education, LLC*