UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

THE PENN MUTUAL LIFE INSURANCE,    :        CASE NO:  15-CV-01111 (AJN)
COMPANY                            :
                                   :
        Plaintiff,                 :
                                   :
KATHY KEHOE, as Trustee of the     :
SICKNESS ACCIDENT & DISABILITY     :
INDEMNITY TRUST 2005; KATHY        :
KEHOE, as Trustee of the GRIST MILL :
TRUST DATED 10-1-03; and UNIVERSITAS :
EDUCATION, LLC,                    :
                                   :
        Defendants.                :
--------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER
## CONCERNING DEPOSITION OF DANIEL CARPENTER

Pursuant to Fed. R. Civ. Pro. 45, non-party witness, Daniel Carpenter, by and through the

undersigned counsel, hereby submits this memorandum of law in support of his motion to quash

the subpoena ("Subpoena")[1] issued by counsel for Defendant, Universitas Education, LLC

("Universitas") and to enter a protective order staying Mr. Carpenter's deposition until the

criminal charges pending against him in the District of Connecticut are resolved.  The Subpoena

seeks to take the deposition of Mr. Carpenter on February 10, 2016 – just six days before he

stands trial on criminal charges relating to the subject matter of the alleged deposition.  See USA

v. Carpenter et al., 3:13-cr-00226-RNC (D. Conn.) (the "Criminal Action").  This is no

coincidence.  Universitas has long known of the impending criminal trial, which was previously

scheduled to commence on February 9, 2016.[2]  It waited to take this deposition until the eve of

---

[1] A copy of the Subpoena is attached hereto as Exhibit A.

[2] Not only is it believed that Universitas is closely following the Criminal Action and even cooperating
with the Government therein, but Mr. Carpenter expressly informed Universitas, nine months ago, that his

that trial in hopes of forcing Mr. Carpenter to invoke his Fifth Amendment privilege, which it will then use to request adverse inferences in this action and in another related proceeding against Mr. Carpenter.  See Universitas Education, LLC v. Nova Group, Inc., Case No. 1:11-cv-01590 (S.D.N.Y.) (the "Nova Action").  To make matters worse, it appears that Universitas did not advise this Court that motions for protective order regarding these efforts to depose Mr. Carpenter for a **third** time have been pending in the Nova Action for nearly a year, and that Universitas has made no effort to have those motions decided.  Instead, Universitas has attempted to use the present action, in which Mr. Carpenter is not a party, to obtain leave of court without notice to Mr. Carpenter's counsel, and to parlay that into a forced deposition on insufficient notice.  These tactics should not be countenanced by this Court.

As discussed more fully below, this Court should quash the subpoena, or alternatively issue a protective order staying Mr. Carpenter's deposition until the resolution of the Criminal Action, because (1) the Subpoena was not personally served on Mr. Carpenter as required by Rule 45 of the Federal Rules of Civil Procedure and the required witness fees have not been tendered, (2) the Subpoena fails to allow a reasonable time for compliance and places an undue burden on Mr. Carpenter by requiring him to appear for his deposition on short notice and just six days before his criminal trial, (3) the Subpoena imposes an undue burden upon Mr. Carpenter's exercise of his Fifth Amendment privilege against self-incrimination, and (4) all relevant questions that could be asked at Mr. Carpenter's deposition will implicate his Fifth Amendment privilege.

---

trial was scheduled for February 2016.  (See Mot. Protective Order at note 1, Doc. # 559, in Universitas Education, LLC v. Nova Group, Inc., Case No. 1:11-cv-01590 (S.D.N.Y.)).  On January 6, 2016, Mr. Carpenter's criminal counsel again informed Universitas of the February trial date by email.

I.      **FACTS AND PROCEDURAL HISTORY.**

    **A.  The Nova Action.**

This action follows on the heels of the Nova Action, in which Universitas is the Plaintiff and Mr. Carpenter is one of several defendants.  Universitas commenced the Nova Action on March 8, 2011 – nearly five years ago – and has since obtained an order affirming an arbitration award entered against Nova Group, Inc. and a turnover judgment against Mr. Carpenter pursuant to N.Y. CPLR § 5225.  Universitas has deposed Mr. Carpenter **twice** in the Nova Action. Universitas also had an opportunity to cross examine Mr. Carpenter when he testified in that action.

Nearly one year ago, on April 23, 2015, Universitas filed a motion in the Nova Action seeking leave of court to depose Mr. Carpenter for a **third** time.  (Nova Action, 1:11-cv-01590, docket entries # 553, 554, 555, 556).  Raising concerns about the invocation of his Fifth Amendment privilege, Mr. Carpenter objected to that motion and requested that the Nova Court enter a protective order precluding his deposition, at least until the criminal charges pending against him are resolved.  By May 18, 2015, that motion was fully briefed and was assigned to Magistrate Judge Henry B. Pitman for consideration.  Id. at 560-61.  The Nova court has not yet ruled on that motion, and in the nine months that have since passed, Universitas has not taken any efforts to obtain a ruling thereon.

    **B.  The Instant Action.**

This action, filed on February 17, 2015, has been pending for nearly twelve months. During that time, Universitas has made absolutely no effort to depose Mr. Carpenter in this action, despite the fact that two of the Court's prior scheduling orders required depositions to

have been completed by now.[3]  We understand that no depositions have yet been taken in this action.

On December 23, 2015, Universitas moved this Court for leave to take the deposition of Mr. Carpenter.  By filing its motion in this action, where Mr. Carpenter is not a party, Universitas avoided giving Mr. Carpenter notice of its motion until after the Court had already granted it – which it did on January 4, 2016.  (Order, Doc. # 44).  Although Universitas knew that the undersigned represented Mr. Carpenter in civil matters, it did not serve the undersigned with a copy of its motion or even the Court's order.  Instead, Universitas sought to obtain this Court's leave to depose Mr. Carpenter apparently without disclosing the pendency of the motion for protective order in the Nova Action and without allowing him to file a similar motion in this Court.

On January 6, 2015, with the Court order granting leave in hand, Universitas contacted Mr. Carpenter's criminal counsel and demanded he be made available for his deposition immediately – without notifying the undersigned, who Universitas had previously been dealing with and who had filed the protective order in the Nova Action.  Finally, on the afternoon of Friday, January 29, 2016, less than thirteen days before the proposed deposition, Universitas' counsel emailed the undersigned and informed him that they were "working . . . to schedule the deposition for Daniel Carpenter for Feb. 10."  (Email from Alex Young to David A. Slossberg, January 29, 2016, attached hereto as Exhibit B).  The undersigned's office responded on the following Monday and asked to be kept informed as to Universitas' attempt to serve Mr. Carpenter and its plans for this deposition, which appeared to be fluid at that time.  (Email from

---

[3] See Civil Case Management Plan And Scheduling Order, dated Aug. 28, 2015, Doc. # 25 (ordering Universitas to complete depositions by November 2, 2015); Revised Civil Case Management Plan And Scheduling Order, dated October 30, 2015, Doc. # 32 (ordering Universitas to complete depositions by January 11, 2016), but see Second Revised Civil Case Management Plan And Scheduling Order, dated January 4, 2016, Doc. # 46 (ordering Universitas to complete depositions by March 4, 2016).

David Shufrin to Alex Young, February 1, 2016, Exhibit B).  Finally, at 4:43 p.m. on Wednesday February 3, 2016, Mr. Young informed the undersigned's office that the subpoena had allegedly been served on Mr. Carpenter.

**C. Good Faith Attempt to Resolve Dispute.**

At approximately 10 a.m. on the morning of Friday, February 5, 2016, the undersigned emailed a letter to Universitas' counsel, Paula K. Colbath, attempting to resolve this dispute without the Court's involvement.  (Letter from David A. Slossberg to Paula K. Colbath, February 5, 2016, Exhibit C hereto).  Among other things, counsel advised that neither he nor Mr. Carpenter were available on such short notice.[4]  This letter was met with a three-page, hostile response that twisted facts and sought to blame the undersigned for Universitas' own delay. (Letter from Leily Lashkari, February 5, 2016, Exhibit D hereto).  Although Universitas waited nearly <u>twelve months</u> to take Mr. Carpenter's deposition, its response took issue with the undersigned taking a day and a half to respond after learning that the subpoena was allegedly served – which time was needed to determine whether actual service was made (which it was not) and to assess scheduling issues.[5]  <u>Id.</u>  Moreover, Universitas made the unreasonable argument that Mr. Carpenter should be available for his deposition in the days leading up to his criminal trial because that trial "has been 'long-anticipated" and therefore Mr. Carpenter has

---

[4] Scheduling is more difficult due to the fact that the deposition would require counsel to travel to Rhode Island from Connecticut, coordination with staff at the correctional facility, and time to prepare Mr. Carpenter, as well as to attend the deposition.  All of this would have to be coordinated with criminal counsel, who are in the throes of preparing for commencement of the criminal trial, and would have to attend the deposition as well.  And all of this is overshadowed by Mr. Carpenter's critical need to prepare for his own defense.

[5] Universitas' response also conflates its frequency of emails over a short time frame with timely and reasonable notice.  Although Universitas emailed Attorney Shufrin three times over a 72 hour period, the first email was merely a response to Attorney Shufrin's email and the remaining two emails did not require a response as they merely requested he contact the prison to provide his personally identifying information.  This email exchange does not change the fact that the subpoena was served less than one week before the proposed deposition.

"presumably prepared accordingly."  Id.  This argument ignores the realities of preparing a

criminal defense and the fact that Mr. Carpenter only recently learned much of the case against

him when, on January 29, 2016, the Government filed a thirty-six (36) page trial memorandum –

which contained eight (8) motions in limine that require responses.  (See Gov.'s Trial Mem., at

1-2, Doc. # 161 in USA v. Carpenter et al., 3:13-cr-00226-RNC (D. Conn.))

## II.   ARGUMENT.

### A.   Service of the Subpoena Was Legally Improper and Witness Fees Have Not Been Tendered.

As an initial matter, Universitas has not properly served the Subpoena on Mr. Carpenter,

nor did it tender the required witness fees.  Mr. Carpenter is currently incarcerated at the Donald

W. Wyatt Detention Facility ("WDF") in Central Falls, Rhode Island.  Rather than making

personal service on Mr. Carpenter, Universitas has merely delivered a copy of the Subpoena to

an employee of the detention facility, Jean Singleton.  Universitas also sent a copy of the

subpoena to the WDF by first class mail, which does not require a signature and provides no

proof of delivery.[6]  Neither of these methods constitutes proper service under the Federal Rules

of Civil Procedure.

Rule 45 of the Federal Rules of Civil Procedure ("Rule 45") sets forth the standards

governing the service of subpoenas issued to non-parties.  It requires that a subpoena be served

by "delivering a copy to the named person and, if the subpoena requires that person's attendance,

tendering the fees for 1 day's attendance and the mileage allowed by law."  Rule 45.  The

longstanding interpretation of Rule 45, by courts in this district and beyond, has been that

personal service of subpoenas is required.  See Haber v. ASN 50th St., LLC, 272 F.R.D. 377,

382 (S.D.N.Y. 2011) (holding that Rule 45 requires personal service of subpoena); Accurso v.

---

[6] The affidavit of service provided by Universitas is attached hereto as Exhibit E.

Cooper Power Sys., Inc., 2008 WL 2510140, at *4 (W.D.N.Y. June 19, 2008) (agreeing with "the majority of jurisdictions (and commentators) . . . that Rule 45(b)(1) requires personal delivery of a subpoena upon the party being served.").[7]  Unlike service of a summons under Rule 4(e), Rule 45 does not permit a subpoena to be served on an agent of the witness.  Compare Rule 45 (requiring service of subpoena to be made "to the named person") with Fed. R. Civ. P. 4(e)(2) (allowing service of summons to be made on "an agent authorized by appointment or by law to receive service of process") (hereinafter "Rule 4").

In the instant action, Universitas has not personally served Mr. Carpenter as required by Rule 45.  Instead, Universitas relies on its service of the subpoena on Ms. Singleton, an employee of the WDF, and asserts that such service effective as to Mr. Carpenter.  Mr. Carpenter has not appointed Ms. Singleton to accept service on his behalf, nor is she authorized by law to do so.[8]  The undersigned's research has not revealed any authority for the general proposition that prison officials are implicitly authorized to accept service on behalf of inmates.

---

[7] Although a minority of courts have recently adopted the view that personal service may not be required under Rule 45, even those courts require that "any alternative service . . . be authorized by a court order." Lapin v. Goldman, Sachs & Co., 2009 WL 2924521, at *2 (S.D.N.Y. Sept. 10, 2009).  Moreover, courts have refused to authorize such alternative service until after "the [serving party] diligently . . . attempted to effectuate personal service" and presented proof that such method of alternative service is "reasonably calculated under the circumstances to provide [witness] with both notice and an opportunity to present objections." Cadlerock Joint Venture, L.P. v. Adon Fruits & Vegetables Inc., 2010 WL 2346283, at *4 (E.D.N.Y. Apr. 21, 2010) report and recommendation adopted, 2010 WL 2346276 (E.D.N.Y. June 8, 2010).  Not only has Universitas failed to obtain prior approval from this Court, but its method of alternative service was not reasonably calculated to provide Mr. Carpenter with notice and an opportunity to present objections.  (See infra Part B (discussing the short time period between alleged service and the time for compliance)).

[8] Ms. Singleton's alleged representation that she is "authorized to accept service at that address on behalf of inmates," (See Aff. of Service, Exhibit E), is of no import.  See, e.g., De Santis v. City of New York, 2011 WL 4005331, at *6 (S.D.N.Y. Aug. 29, 2011) (holding that statement that employee informed process server that she was authorized to accept service of summons on defendant's behalf was insufficient without evidence that defendant actually authorized employee to accept service); Schwarz v. Thomas, 222 F.2d 305 (D.C. Cir. 1955) (holding that authority to accept service of summons cannot be shown by extrajudicial statements of alleged agent).

While several states have specific statutes that appear to authorize wardens, sheriffs, or jailers of state facilities to accept service on behalf of inmates in their custody, there exists no such statute governing federal prisons or even state prisons in Rhode Island.[9]

In fact, courts have rejected attempts to serve inmates by leaving a copy with the prison facility where statutes authorizing service in this manner did not apply or were not properly followed.[10]  For example, in <u>Garcia v. Garcia</u>, 712 P.2d 288, 290 (Utah 1986), the Supreme Court of Utah held that a summons, left with a prison officer at a Utah state prison, was not properly served on an inmate in that prison because the prison officer was neither appointed by the inmate nor authorized by law to accept service on the inmates behalf.  In reaching its decision, the Court held that a Utah statute authorizing country sheriffs or jailers to receive service of process for prisoners did not apply to inmates in state prisons and therefore, personal service on the inmate was required.  <u>Id.</u>

Similarly, in <u>Bagneris v. Dorsey</u>, 2013 WL 6490334, at *2-3 (E.D. La. Dec. 10, 2013), the Eastern District of Louisiana held that a summons was not properly served where it was sent to a parish jail housing the defendant by certified mail and it was signed for by an employee of that jail.  In that case, a Louisiana statute expressly authorized service on an inmate in a local jail to be made through "personal service on the warden or his designee for that shift."  La. Code Civ. Proc. art. 1235.1.   Although service by certified mail would normally have been allowed under the more relaxed rules applicable to a summons in Louisiana, the statute only authorized

---

[9] Even if such a statute did exist, the WDF is neither a federal nor Rhode Island State prison facility. Rather, the WDF is a "privately operated adult secure correctional facility . . . operated by the Central Falls Detention Facility Corporation."  <u>See</u> http://www.wyattdetention.com/About-Us/History. This private facility houses prisoners for various federal agencies, including the United States Marshal Service.

[10] These cases all appear to be in the context of the service of a summons under state or federal procedure, which typically has less stringent requirements than the service of a subpoena on a non-party.  <u>Compare</u> Rule 45 <u>with</u> Rule 4.

the warden to accept service on behalf of an inmate when personal service was made on the

warden.  Bagneris, 2013 WL 6490334, at *3.  The Bagneris court held that, absent compliance

with the state statute, service on the warden or his designee was not valid service on the inmate.

The Texas Court of Appeals has also held that service on an employee of a prison facility

is not valid service on an inmate in the facility, except upon compliance with a statute stating as

such.  See In re J.M.H., 414 S.W.3d 860, 862 (Tex. App. 2013).  In J.M.H., the State attempted

to serve a civil petition on an inmate by delivering a copy thereof to a correctional officer at the

facility housing that inmate.  In Texas, a statute expressly authorizes a warden of a state prison,

or his designee, to accept service of civil process on behalf of an inmate.  Tex. Civ. Prac. & Rem.

Code § 17.029.  The inmate did not appear and the state sought a default judgment.  The J.M.H.

court denied the State's motion because it failed to present evidence that the employee who

accepted service was the warden's designee, as required by statute.

Given the lack of any federal statute authorizing prison officials to accept service on

behalf of inmates, it is not surprising that the official policy of the United States Department of

Justice and the Federal Bureau of Prisons is that **"[t]he BOP will not accept service of process**

**for an inmate."**  Legal Resource Guide to the Federal Bureau of Prisons at 35, U.S. Department

of Justice, 2014, available at: http://www.bop.gov/resources/pdfs/legal_guide.pdf (emphasis

added).  Moreover, federal prison facilities around the country have adopted procedures to allow

civil process to be personally served on inmates in their custody.  For example, the directive on

inmate legal activities for the Federal Correctional Institution in Ray Brook, New York provides

that:

> The Essex County Sheriff and the New York State Police are authorized to
> effect personal service of process upon inmates at this facility. At a time
> not to interfere with the normal operation of the institution, **staff will**
> **escort the deputy or trooper to D building, where we will also bring the**

**inmate and allow personal service of process**. . . . Requests by other parties, e.g.,
private process servers or private investigators, to effect service of
process on an inmate will be treated as a request for a special visit and
handled by the Unit Team in the manner described above.

Institutional Supplement at 5, <u>Federal Correctional Institution, Ray Brook, NY</u>, December 31,

2012, available at:  <u>www.bop.gov/locations/institutions/rbk/RBK_legal_activities.pdf</u>.

Not only has Universitas failed to make personal service of the Subpoena on Mr.

Carpenter, but it has also failed to tender the witness fee required by Rule 45 and 28 U.S.C.A. §

1821(b).  "The plain meaning of Rule 45(c) requires simultaneous tendering of witness fees . . .

with service of a subpoena." <u>CF & I Steel Corp. v. Mitsui & Co. (U.S.A.)</u>, 713 F.2d 494, 496

(9th Cir. 1983).  The Affidavit of Service provided by Universitas claims to have offered Ms.

Singleton a "witness fee of $45 . . . but the deponent was advised that the facility does not accept

witness fee checks and the amount can be deposited into the inmates commissary account on the

day of the deposition."  Aff. of Service, Exhibit E.  This is entirely irrelevant for two reasons.

First, neither Ms. Singleton nor the WDF is authorized to waive Mr. Carpenter's right to receive

the witness fee with service of the subpoena.  Second, the facility's refusal to allow "witness fee

checks" does not prevent Universitas from tendering the witness fee in cash or depositing the

witness fee directly into Mr. Carpenter's inmate account at the time personal service is made

upon Mr. Carpenter.[11]

Since Universitas has failed to personally serve Mr. Carpenter and has failed to tender the

statutory witness fee, the Subpoena is invalid and unenforceable.  <u>See, e.g.</u>, <u>City of New York v.</u>

<u>FedEx Ground Package Sys., Inc.</u>, 2015 WL 783363, at *4 (S.D.N.Y. Feb. 24, 2015) (holding

---

[11] The level of Universitas' indifference for this statutory requirement is astonishing.  Although the WDF
may not permit a check for witness fees, Universitas can deposit money into Mr. Carpenter's inmate
account at anytime, online, by phone, or by using the self-serve kiosk in the WDF lobby.  <u>See</u>
<u>http://www.wyattdetention.com/Detainee-Info-Services/Depositing-Funds</u>.

that failure to personally serve non-party and/or tender witness fees rendered subpoena invalid and unenforceable).

**B.     The Subpoena Fails to Provide a Reasonable Time To Comply and Imposes an Undue Burden on Mr. Carpenter.**

The Subpoena seeks to depose Mr. Carpenter on February 10, 2016, less than one week after it was served[12] and less than one week before the start of Mr. Carpenter's criminal trial. This Subpoena fails to provide Mr. Carpenter with a reasonable time to comply and imposes an undue burden on him, especially since he is currently preparing to defend against highly complex criminal charges in the Criminal Action.  Mr. Carpenter, who himself is an attorney, is highly involved in the preparation of his own defense.  His trial is scheduled to commence on February 16, 2016 and the Government estimates that it will need 15-20 days of evidence to present its case against him.[13]

"Rule 45(c)(3)(A)(i) provides that 'the issuing court must quash' a subpoena that 'fails to allow a reasonable time to comply."  Brown v. Hendler, 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011).  "Federal courts have also found compliance times of eight and seven days not to be reasonable."  Id. (holding that service nine days before proposed deposition date did not allow a reasonable time to comply); see also In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31, 2010 WL 2219343, at *5 (E.D.N.Y. Feb. 5, 2010)

---

[12]  It is not clear exactly when Universitas left the Subpoena with Ms. Singleton.  At 4:43 p.m. on February 3, 2016, counsel for Universitas, Alex Young, sent the undersigned an email claiming that the Subpoena had been served on Mr. Carpenter.  Although Universitas did send a copy of the Subpoena to Mr. Carpenter's legal counsel when it was issued on January 29, 2016, Universitas has a long history of noticing depositions and cancelling them at the last moment.

[13]  Judge Chatigny has set aside 24 days for Mr. Carpenter's trial in the Criminal Action.  (Notice Of E-Filed Calendar, Doc. # 163 in USA v. Carpenter et al., 3:13-cr-00226-RNC (D. Conn.)).

(collecting cases and holding that subpoena failed to provide reasonable time to comply where service was made seven days before compliance was demanded).

Mr. Carpenter respectfully requests that this Court delay his deposition until the resolution of the criminal charges against him.  Neither Mr. Carpenter nor the undersigned counsel are available on February 10, 2016 and requiring Mr. Carpenter to prepare for and attend a deposition at this time will prejudice his ability to prepare his criminal defense by distracting Mr. Carpenter and his attorneys from preparing for the criminal trial.[14]  It is beyond dispute that granting such a request is within this Court's discretion.  "A district court has a legitimate interest in maintaining control over its docket and enjoys considerable discretion in setting schedules for discovery, motions, and trial."  S.E.C. v. Rajaratnam, 622 F.3d 159, 186 (2d Cir. 2010).  Numerous courts have exercised this discretion to avoid conflicts with a witness's criminal trial.  See, e.g., Baker v. Orleans Cty., 1997 WL 436703, at *1 (W.D.N.Y. July 21, 1997) (ordering that depositions in a civil case be taken in specific sequence to avoid conflicting with witness's upcoming criminal trial); S.E.C. v. Downe, 1993 WL 22126, at *14 (S.D.N.Y. Jan. 26, 1993) (granting, in a civil case, a stay of all discovery relating to a criminal defendant at the government's request); Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007 (E.D.N.Y. 1992) (staying all discovery in a civil case pending outcome of a criminal trial).

Since Mr. Carpenter's criminal trial is scheduled to commence on February 16, 2016, the delay occasioned by the granting of this request will be minor and any prejudice that Universitas may face as a result of this delay will be minimal.  Moreover, in light of Universitas' prior delays in seeking this deposition, any prejudice cause by a further delay will have been self-inflicted.

---

[14] Given the overlap between the issues in this case and the Criminal Action, Mr. Carpenter's criminal attorneys (in addition to his civil attorneys) will need to attend the proposed deposition so that they can advise him as to the invocation of the Fifth Amendment privilege, which simply cannot occur until after the criminal trial concludes.

Universitas has long known about Mr. Carpenter's criminal trial and has had many opportunities to seek Mr. Carpenter's deposition in this action, which has already been pending for nearly a year and has seen two deposition cut-off dates come and go.  See Supra, FN 3.

Similarly, Universitas has been litigating against Mr. Carpenter for several years in the Nova Action.  It has already taken Mr. Carpenter's deposition twice in connection with that action and has had the benefit of Mr. Carpenter's testimony at a hearing therein.  In April 2015, Universitas filed a motion for leave to take Mr. Carpenter's deposition for a third time.[15]  The Nova court has not yet ruled on that motion and, over the past nine months, Universitas has not taken any action to seek adjudication thereof.

Despite the lackadaisical nature of its prior efforts to depose Mr. Carpenter, Universitas now claims to have an immediate need to take Mr. Carpenter's deposition on the eve of  his criminal trial.  This is hard to fathom given that this case has not yet been scheduled for trial, discovery remains open, and no other depositions have yet been taken.[16]  As such, Mr. Carpenter respectfully requests an order postponing his deposition until the resolution of the criminal charges against him.

**C.**     **The Existence of a Parallel Criminal Proceeding Warrants a Stay of Discovery.**

In addition to the undue burden that the proposed deposition will place on Mr. Carpenter's schedule, an undue burden will also be placed on Mr. Carpenter's exercise of his Fifth Amendment rights.  Although Mr. Carpenter is a non-party witness in this case, he is a

---

[15] Mr. Carpenter objected to that motion and filed a protective seeking to preclude his deposition until the resolution of the Criminal Action.  See Universitas Education, LLC v. Nova Group, Inc., Case No. 1:11-cv-01590 (S.D.N.Y.), docket entries # 553, 554, 555, 556, 559, 561).

[16] Upon information and belief, Universitas has repeatedly scheduled depositions for other witnesses in this action only to cancel them at the last minute.  This is consistent with their prior behavior in the Nova Action.

defendant in the Nova Action, where Universitas has repeatedly sought adverse inferences based on Mr. Carpenter's use of the Fifth Amendment privilege.  It appears that Universitas is seeking to utilize discovery in this action in order create adverse inferences that can be used against Mr. Carpenter in the Nova Action.[17]  Since the issues raised by Universitas in this action are closely related to the issues in the Nova Action and the Criminal Action, requiring Mr. Carpenter to be deposed on the eve of his criminal trial places undue burden on his exercise of his Fifth Amendment privilege.  If deposed now, he will face the difficult choice between being prejudiced in civil litigation by his assertion of the privilege, or from being prejudiced in the criminal Action if he waives the privilege.  This significant burden can be eliminated or reduced by delaying Mr. Carpenter's deposition until the criminal charges against him are resolved.

The Second Circuit has held that requiring an individual to testify in a civil action while parallel criminal proceedings are imminent places a significant burden upon the witnesses' Fifth Amendment privilege against self-incrimination.  Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 98 (2d Cir. 2012).  Since the Fifth Amendment does not forbid adverse inferences in a civil action, the witness must choose between asserting the Fifth Amendment privilege and accepting the adverse inferences that may accompany it, or electing not to invoke their Fifth Amendment privilege and risk that their testimony may constitute admissions of criminal conduct in the criminal prosecution.  Louis Vuitton Malletier S.A., 676 F.3d at 98.

A stay can protect the witness from "facing the difficult choice between being prejudiced in the civil litigation, if the defendant asserts his or her Fifth Amendment privilege, or from

---

[17] Since Universitas has been unable to obtain leave from the Nova court to take Mr. Carpenter's deposition for a third time, it instead sought leave from this Court without serving a copy of its motion on Mr. Carpenter.  This appears to have been a carefully calculated attempt to sidestep the motion for protective order pending in the Nova court and obtain this Court's leave without giving Mr. Carpenter an opportunity to object.  Notably, Universitas did not disclose the pendency of the motion for protective order in the Nova Action when it moved this Court for leave to take Mr. Carpenter's deposition.

being prejudiced in the criminal litigation if he or she waives that privilege in the civil

litigation." Id.  As such, the Second Circuit has held that it will sometimes be prudential for a

district court to "stay civil proceedings when related criminal proceedings are imminent or

pending." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 98 (2d Cir. 2012); see

also United States v. Kordel, 397 U.S. 1, 12 n. 27 (1970) (noting that courts may "defer [ ] civil

proceedings pending the completion of parallel criminal prosecutions when the interests of

justice seem[ ] to require such action").

The Second Circuit has established the following six factors to be used in determining

whether to stay a civil matter in its entirety when a parallel criminal action is pending:

> 1) the extent to which the issues in the criminal case overlap with those presented
> in the civil case; 2) the status of the case, including whether the defendants have
> been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously
> weighed against the prejudice to plaintiffs caused by the delay; 4) the private
> interests of and burden on the defendants; 5) the interests of the courts; and 6) the
> public interest.

Id. at 99.

These factors clearly favor a stay of civil discovery regarding Mr. Carpenter.  The issues

in the Criminal Action greatly overlap with the issues raised by Universitas in civil actions

involving Mr. Carpenter.  The Superseding Indictment in the Criminal Action alleges that Mr.

Carpenter engaged in mail and/or wire fraud, money laundering, and illegal monetary

transactions relating to, *inter alia*, the transaction that lead to Universitas' judgment against him

in the Nova Action.  (Superseding Indictment, No. 3:13CR226 (RNC) (D. Conn.)).  The

Government seeks to prove that Mr. Carpenter allegedly controlled a "myriad" of entities as part

of what it alleges was an illegal Stranger Originated Life Insurance ("STOLI") scheme.  (Gov.'s

Trial Mem., at 1-2, Doc. # 161 in USA v. Carpenter et al., 3:13-cr-00226-RNC (D. Conn.)).  In

this case, Universitas claims that Mr. Carpenter allegedly controlled the Grist Mill Plan and the

SADI Plan and that those entities "should be pierced because they are alter egos of Mr.

Carpenter."  (Universitas' Mem. in Supp. of Mot. for Leave to Depose Mr. Carpenter, at 2-4,

Doc. # 42).  Civil discovery regarding Mr. Carpenter's alleged control of these entities and any

transactions involving those entities could potentially be used against him in the Criminal

Action, or may furnish a link in the chain of evidence that could lead to further prosecution

against him.

Since Mr. Carpenter's criminal trial is scheduled to commence less than one week before

the proposed deposition date any delay occasioned by the granting of this request will be minor

and any prejudice that the parties to this action may face as a result of this delay will be minimal.

This is especially so given the status of this case, where no trial has been set and discovery has

only just begun.

A stay is also in the interests of judicial economy, as Mr. Carpenter's invocation of the

Fifth Amendment privilege would likely lead to significant litigation concerning the

appropriateness and extent of adverse inferences where the individual invoking the Fifth

Amendment privilege is a non-party witness.

**D.      All Relevant Questions That Could Be Propounded At Mr. Carpenter's Deposition
         Will Implicate His Fifth Amendment Privilege.**

Finally, Mr. Carpenter requests this Court reconsider its Order granting Universitas'

Motion for Leave to Take the Deposition of Daniel Carpenter, or enter a protective order

precluding Mr. Carpenter's deposition at this time.  Universitas' Motion for Leave was nothing

less than a surreptitious attempt to circumvent a motion for protective order concerning Mr.

Carpenter's deposition that is currently under consideration by The Honorable Henry B. Pitman

in the Nova Action.  That motion raises Mr. Carpenter's Fifth Amendment privilege against self-

incrimination and presents an issue of first impression in this circuit – namely whether the Fifth

Amendment privilege should preclude a deposition when any relevant questions that could be propounded at the proposed deposition would necessarily implicate the privilege.

Universitas' plea to this Court for leave to depose Mr. Carpenter in this action was a carefully calculated attempt to sidestep this important constitutional issue.  By filing its motion in this action, where Mr. Carpenter is not a party, Universitas avoided giving Mr. Carpenter, or the undersigned counsel, notice of its motion until after the Court had already granted it.  Since Mr. Carpenter was not given an opportunity to object, Universitas seemingly believed it could obtain this Court's leave without disclosing the pendency of the motion for protective order in the Nova Action or facing a similar motion in this Court.  Universitas then waited until just seven days before the proposed deposition to attempt service on Mr. Carpenter – thereby leaving little time for the present motion to be prepared.

Universitas' effort to depose Mr. Carpenter in this action, however, raises the same issues as it did in the Nova Action.  As discussed above, the issues in the Criminal Action greatly overlap with the issues raised by Universitas in this action.  Any questions concerning Mr. Carpenter's alleged control of the Grist Mill Plan and the SADI Plan could potentially be used against him in the Criminal Action, or may furnish a link in the chain of evidence that could lead to further prosecution against him.  As such, any relevant question that could be propounded by Universitas at the proposed deposition would implicate Mr. Carpenter's Fifth Amendment privilege.

The Fifth Amendment Privilege against self-incrimination has been broadly construed to "assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action."  <u>Maness v. Meyers</u>, 419 U.S. 449, 461 (1975).  The privilege applies "in any proceeding, civil or criminal, administrative or judicial, investigatory or

adjudicatory." Id. at 464.  "The protection does not merely encompass evidence which may lead

to criminal conviction, but includes information which would furnish a link in the chain of

evidence that could lead to prosecution, as well as evidence which an individual reasonably

believes could be used against him in a criminal prosecution." Id. at 461.

The privilege applies whenever the witness has "reasonable cause to apprehend danger

from a direct answer." Hoffman v. United States, 341 U.S. 479, 486 (1951).  A witness is not

required to prove the applicability of the privilege to the level that a claim is usually required to

be established in court and a court may not require him to answer unless "it clearly appears to the

court that he is mistaken" about the hazard of incrimination.  Id.

Although the privilege generally must be invoked on a question by question basis, see

United States v. Arias, 404 F. App'x 554, 556 (2d Cir. 2011), that should not apply where, as

here, the nature of the proceeding has narrowed the scope of inquiry to matters germane to a

pending criminal prosecution.  In such a situation, the Court is able to determine whether a

witness's invocation of the Fifth Amendment is founded upon a reasonable fear of prosecution,

without the benefit of individual questions.  See Rainerman v. Eagle National Bank of Miami,

541 So.2d 740, 741-42 (Fla. 3dDCA 1989).

In Rainerman, the plaintiff-bank moved to compel the deposition of a judgment debtor in

aid of execution of a judgment.  Id.  The judgment debtor, however, was facing criminal charges

arising out of banking transactions with the plaintiff-bank and there were other charges that

could be brought against the judgment debtor depending on the judgment debtor's answers to

questions regarding his assets.  Id.  The trial court compelled discovery and the appellate court

reversed, holding that the judgment debtor has a right to make a blanket assertion of the privilege

against self-incrimination where the scope of civil discovery so overlapped with the nature of

criminal proceedings as to render any potential question subject to the Fifth Amendment privilege.

The decision in <u>Rainerman</u> is particularly fitting to the present case.  The nature of these proceedings and the nature of the pending criminal charges against Mr. Carpenter are such that he may reasonably fear prosecution arising from or relating to any relevant question that Universitas may ask at his deposition.  The resolution of the criminal charges against Mr. Carpenter, however, may significantly lessen the fear of prosecution that gives rise to the privilege.

**E.    Conclusion.**

For the foregoing reasons, Mr. Carpenter respectfully requests that this Court quash the Subpoena and enter a protective order staying Mr. Carpenter's deposition until the resolution of the criminal charges pending against him in the District of Connecticut.

Dated: February 8, 2016                         DANIEL CARPENTER


                                    By:    /s/ David A. Slossberg
                                           David A. Slossberg, Esq. (DS-0566)
                                           HURWITZ SAGARIN SLOSSBERG &
                                           KNUFF, LLC
                                           147 North Broad Street, P.O. Box 112
                                           Milford, CT 06460-0112
                                           Phone:  203-877-8000
                                           Fax: 203-878-9800
                                           E-mail:  dslossberg@hssklaw.com

**CERTIFICATE OF SERVICE**

This is to certify that on February 8, 2016, a copy of the foregoing was filed

electronically and served by mail on anyone unable to accept electronic filing.  Notice of this

filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and

by mail to all parties that are unable to accept electronic filing.  Parties may access this filing

through the Court's electronic system.

/s/ David A. Slossberg
David A. Slossberg